George Beisheim, Jr., J.
The defendants have been indicted for the crime of felony murder. Defendant Mirenda, joined by Bielawa, moves for an order of suppression of evidence alleged to have been illegally obtained by the People by means of wiretaps and directing a hearing for the purpose of establishing the nature, extent and results of the wiretaps. It is the impact of the defendants’ motion papers that they are entitled to an adversary proceeding and full disclosure for resolution of every issue they raise with respect to any wiretaps, without first establishing their standing to challenge the validity of any of the wiretaps. “Standing” presents a “threshold question” in determining whether a defendant can challenge wiretap evidence (People v. Morhouse, 21 N Y 2d 66, 76; People v. McDonnell, 18 N Y 2d 509, 510). Defendants merely assert that the contents of the record of the previous trial (23 N Y 2d 439) conclusively demonstrate that, in the course of investigation of the case, the investigating officers utilized wiretaps.
The affidavit in opposition to the motion based upon the People’s files states that only two wiretaps were employed in *400 the case and that they were pursuant to court order. These were wiretaps on the telephone of former eodefendant Frank Griggs and on the telephone of Mrs. Celia Heller, the mother of former codefendant Philip Heller. The charges against codefendants Griggs and Heller were disposed of by plea. Further, thej People state that an examination of the logs of those wiretaps indicates that at no time were any conversations recorded with respect to which either defendant, Mirenda or Bielawa, was a party, and that the People do not intend to introduce any evidence obtained from such wiretaps or derived from such wiretaps. In their reply affidavit, neither defendant, Mirenda nor Bielawa, alleges that they made telephone calls to the parties above indicated or that they were subscribers to the tapped telephones. However, they do assert that, under the circumstances of the case, they are not bound by the affidavit of the People.
It cannot be questioned that the defendants lack standing to challenge the validity of the wiretaps herein (Alderman v. United States, 394 U. S. 165). In Alderman, the Supreme Court stated as follows (pp. 171, 172, 176):
‘ ‘ However, in the cases before us, each petitioner demands retrial if any of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights the surveillance violated. At the very least, it is urged that if evidence is inadmissible against one defendant or conspirator, because tainted by electronic surveillance illegal as to him, it is also inadmissible against his codefendant or coconspirator.
‘ ‘ This expansive reading of the Fourth Amendment and of the exclusionary rule fashioned to enforce it is admittedly inconsistent with prior cases, and we reject it. The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing.
“In these cases, therefore, any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if the United States unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations.” (Italics supplied.)
*401 If the standing of the defendants was established, then they would be entitled to a hearing to challenge the validity of the wiretaps and, if that challenge was successful, entitled to a disclosure of any wiretap records which violated their Fourth Amendment rights. However, since the standing of the defendants has not been established, the most that they are entitled to is an in camera examination of the wiretap records by the court in which the court will determine whether the defendants have standing to challenge the validity of the wiretaps at a full hearing and disclosure to follow (Alderman v. United States, 394 U. S. 165, supra; Giordano v. United States, 394 U. S. 310; Taglianetti v. United States, 394 U. S. 316).
Taglianetti was a Per Curiam decision in which the Supreme Court stated as follows:
‘ ‘ Following a jury trial in the District Court, petitioner was convicted on three counts of wilfully attempting to evade his income tax for the years 1956, 1957, and 1958. Following a remand to the District Court, the Court of Appeals affirmed the convictions. In the District Court on remand, the Government purported to turn over to petitioner all of his own conversations which had been overheard by means of unlawful electronic surveillance. Petitioner argues that he was entitled to examine additional surveillance records because neither the Government nor the District Court was able to determine with certainty which conversations petitioner had been a party to. In fact the District Court examined all the records in camera to ascertain if the Government had correctly identified petitioner’s voice and had turned over to petitioner each conversation in which he had participated.
“ Nothing in Alderman v. United States, Ivanov v. United States, or Butenko v. United States [394 U. S. 165], requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance. On the contrary, an adversary proceeding and disclosure were required in those cases not for lack of confidence in the integrity of government counsel or the trial judge, but only because the in camera procedures at issue there would have been an inadequate means to safeguard a defendant’s Fourth Amendment rights. Here the defendant was entitled to see a transcript of his own conversations and nothing else. He had no right to rummage in government files. The trial court was asked to identify only those instances of surveillance which petitioner had standing to challenge under the Fourth Amendment exclusionary rule and to doublecheck the accuracy of the Government’s voice identifications. Under the circumstances presented here, we cannot *402 hold that ‘ the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court. ’ ”
Thus, from Giordano and Taglianetti, it is clear that an in camera examination will be allowed to determine the issue of standing. Of course, once standing is established and a wiretap found illegal, the court may not determine the tainted evidence issue in camera. Further, the integrity of the District Attorney in disclosing the nature and extent of the wiretap surveillance and the integrity of the Trial Judge as to the results of the in camera examination are not subject to constitutional attack.
In arriving at the conclusion that there should be an in camera examination of the wiretap records to determine the issue of standing, and not the full disclosure requested by the defendants, the court has not overlooked People v. Munger (24 N Y 2d 445) where the Court of Appeals granted a full hearing rather than an in camera examination as follows (p. 454): “At the hearing the District Attorney must disclose to each defendant all wiretapping of conversations to which he was a party, or to which he might have standing to object (see Alderman v. United States, supra). It may very well be that some of the defendants have no standing to object to some of the wiretapping which occurred here, but that will have to be determined at the hearing.”
In tbe Munger ease, however, at least one of the defendants definitely had standing, which is not the situation in the case at bar, which is similar to the situation in the Giordano case. Giordano, accompanied by Taglianetti, clarified the meaning of Alderman to the extent that they did not require an adversary proceeding and full disclosure for the resolution of the issues raised by the wiretap surveillance in the case at bar.
Accordingly, at this stage of the proceeding, there shall be ordered an in camera examination by the trial court of all the wiretap records herein in order to determine whether the defendants have standing to challenge the validity of any of the wiretaps.